CONROY v. CITY OF BATTLE CREEK.

1. MUNICIPAL CORPORATIONS—CITY COMMISSION—REVALUATION AND REAPPRAISAL OF PROPERTY.
   The determination that a revaluation and reappraisal of the property in a home-rule city should be made is a proper function of municipal power vested in the commission where home-rule act and charter adopted thereunder vest the municipal corporation with right to exercise "all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not" and charter vests corporate powers in the city commission (1 Comp. Laws 1929, § 2240; Battle Creek Charter, chap. 1, § 1, pars. [f, g]; chap. 8, § 1).

2. Same—Revaluation and Reappraisal of Property—Experts—City Assessor.

It was not *ultra vires* for a home-rule city to obtain expert information from others than residents of the city itself in the matter of revaluation and reappraisal of property within the city for the purposes of taxation, especially where there was no delegation of power whatsoever and the city assessor had the final decision (1 Comp. Laws 1929, § 2240; Battle Creek Charter, chap. 1, § 1, pars. [f, g], chap. 8, § 1; chap. 13, § 2).

3. Same—Purpose of Home-Rule City Act.

The purpose of the home-rule city act was to secure to cities a greater degree of home rule than they formerly possessed and to confer upon them exclusive rights in the conduct of their affairs not in conflict with the Constitution or general laws applicable thereto (1 Comp. Laws 1929, § 2228 *et seq.*).

4. Same—Construction of Statutes.

The home-rule city act should be construed liberally and in the home-rule spirit (1 Comp. Laws 1929, § 2228 *et seq.*).

5. Same—Home-Rule Cities—General Grant of Powers.

Under the home-rule act cities have a general grant of rights and powers, subject only to certain enumerated restrictions, instead of former method of having only enumerated rights and powers definitely specified (1 Comp. Laws 1929, § 2228 *et seq.*).

6. Same—Home-Rule Cities—Charters—City Commission—City Assessor—Assistance.

Home-rule city charter and act under which charter was adopted *held*, not to have contained any provision prohibiting city commission from contracting with nonresident experts for the appraisal of all properties in the city so as to assist the city assessor in exercising all the duties required of him by the charter and statutes in an equitable manner and to establish a uniform system for assessment of property (1 Comp. Laws 1929, § 2228 *et seq.;* Battle Creek Charter, chap. 1, § 1; chap. 13, §§ 1, 2).

7. Same — Tax Assessment — Depreciation — War-Inflation — Review.

Use of the year 1940 in determining value of properties for assessment purposes upon revaluation and reappraisal made in 1945 or later in a home-rule city pursuant to a contract with nonresident experts was neither illegal nor improper where depreciation would be considered, such year antedated the war

and any inflation caused thereby, and an aggrieved taxpayer has his right of review (Battle Creek Charter, chap. 13, §§ 1, 2).

8. EQUITY—FRAUD—PLEADING—FACTS—CONCLUSIONS.

The facts by which a claim of fraud is shown, not conclusions, must be pleaded in a suit in equity.

9. MUNICIPAL CORPORATIONS—ASSESSMENT OF TAXES—NONRESIDENTS AS ASSISTANT ASSESSORS.

Home-rule city commission's appointment, as assistant assessors without compensation from the city, of nonresident employees of company which contracted to furnish expert advice for revaluation and reappraisal and establish a uniform system of assessment, so as to enable them to go upon the various properties, make necessary measurements and inspect the construction and material, was not improper, even if issue could be raised in suit by taxpayer to set aside the contract for such service (Battle Creek Charter, chap. 13, §§ 1, 2).

10. SAME—CONTRACTS FOR FUTURE SERVICES.

A contract for future services, to be paid for after rendition, is not an incurring of indebtedness within charter limitations.

11. SAME—INJUNCTION—CONTRACT FOR FUTURE SERVICES—APPROPRIATION FOR PAYMENT.

A taxpayer in a home-rule city was not entitled to injunction restraining the making of payments under a contract for expert services in the matter of revaluation and reappraisal of property in the city and establishment of system of uniform assessment until an appropriation had been made as such a contract is not considered the incurring of indebtedness within charter limitations (Battle Creek Charter, chap. 13, §§ 1, 2).

12. SAME—REVALUATION AND REAPPRAISAL OF PROPERTY—UNIFORMITY.

Contract for revaluation and reappraisal of property within a home-rule city, which included provision requiring company, upon completion of its studies of land values, to arrange and attend meetings with a committee of local realtors and land authorities in order that unit values established by the company might be reviewed and considered, being purely advisory in nature, held, not invalid since it is not binding on the city assessor nor does it affect right to have reviewing and equalizing authorities ascertain if the properties have been equally and uniformly assessed at true cash value (Const. 1908, art. 10, § 3; Battle Creek Charter, chap. 13, §§ 1, 2).

13. Taxation—Uniformity—Assessment—Equalization.

The constitutional requirement that ad valorem taxes shall be assessed pursuant to a "uniform rule of taxation" can be satisfactorily effected through the process of equalization (Const. 1908, art. 10, § 3; 1 Comp. Laws 1929, § 3422).

14. Costs—Public Question—Contract for Expert Services— Uniform Assessment of Property for Taxes.

No costs are allowed in suit by taxpayer to set aside contract with nonresident company for services to be rendered in revaluation and reappraisal of property and establish a uniform system of valuation for assessment purposes, a public question being involved.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 10, 1946. (Docket No. 51, Calendar No. 43,262.) Decided April 1, 1946.

Bill by John Conroy against the City of Battle Creek and others to restrain work or payment under contract for appraisal of commercial, residential and industrial property and to have contract declared illegal and void. Decree for defendants. Plaintiff appeals. Affirmed.

*Howard W. Cavanagh* and *William V. Bailey,* for plaintiff.

*Cobb & Nielsen,* for defendant Cole-Layer Company.

*Howard E. Wilder,* for other defendants.

Butzel, C. J. The city commission of the city of Battle Creek determined that a revaluation and reappraisal for assessment purposes of the property in the city should be made. On March 27, 1945, Cole-Layer Company of Dayton, Ohio, a copartnership, consisting of John D. Cole, Harold F. Layer and Melvin J. Trumble, herein for brevity called the company, made two written propositions addressed to the city assessor of Battle Creek in which

the company offered to furnish the services of experienced and qualified appraisers to appraise and revalue for assessment purposes all of the land and buildings and the public-utility properties in the city of Battle Creek. The propositions provided for the development of analyzed unit costs for various materials, erected in place, which would include the cost of all the elements and services entering into construction of buildings. The company was to make a plat plan drawn to scale of each industrial plant, carefully describing thereon the buildings, which were to be valued according to their component parts and also depreciated according to their age, condition and degree of utility. The total value of industrial plants was to represent the sound utility value of the property for which it was or might be used. These industrial plant appraisals were to be summarized, typed and bound and delivered to the city assessor. Appraisals of all the residences and the current residential costs in Battle Creek were to be investigated and analyzed. The unit costs were to form the basis for the residential appraisal schedules to be utilized in the appraisals of residential properties in Battle Creek. The schedules were to show the basic price per square foot of various types of houses of various construction and quality. The schedules were to be completed for various story heights of dwellings and to cover a range adequate for all types of houses. The various elements comprising cost were to be set forth with particularity; depreciation allowances were to be established and functional depreciation applied for obsolescence, design, lack of utility, local and other factors affecting the market value of each parcel of property. Record cards were to be made of the residential property and submitted to the city assessor to form the basis for the final assessed valuation. In the same manner commercial properties

were to be valued, and all factors affecting the market value of parcels of land such as location, size and shape of parcels, and other factors were to be carefully considered. Depth tables and corner influence tables were to be developed for the valuation of lots. These tables were to be in accordance with the best practices of land valuation and were to be subject to the approval of the city assessor; the company to furnish him with an outline block map of the properties with unit land values clearly indicated. The company was likewise to furnish property record cards. The company also proposed the making of an appraisal of public utility properties, and an inventory of all physical equipment including appraisal of the component parts of electric distribution systems; all property to be inventoried, priced in detail and depreciated. In short, the city was to receive in detail a complete reappraisal and revaluation of all the property hereinbefore described in the city of Battle Creek, and to receive a system with proper cards, maps, et cetera, so that a modern current system could be established for proper assessments and future guidance. The result to be attained would be a uniform system of valuation for assessment purposes.

These propositions were accepted, and two months later a final written agreement was entered into embodying most of the provisions and proposals, but also omitting some of the features to which possible objection might be made. The written contract was executed by the company and the officers of the city in accordance with a resolution of the commission made on July 9, 1945. It provided for the appraisal of all industrial, commercial and residential properties in the city of Battle Creek, as well as the gas and electrical public utility systems consisting of their lands, buildings, machinery, equipment and distribution systems in the city of Battle Creek. It

also included the valuation of all land in the city. It distinctly provided that in the reappraisal and revaluation for assessment purposes of the properties, the Battle Creek city assessor was to act and serve as appraiser in chief, and he was to make final decisions as to valuations, procedures and forms used in revaluation. Material and labor costs were to be determined as of such date as designated by the city assessor. The appraisals of all kinds were to be summarized, typed, bound and delivered to the city assessor of the city of Battle Creek. The company was to furnish him with an outline block map with unit land values clearly indicated. The depth tables, corner influence tables and valuation rules as developed by the company for the pricing of all lands in accordance with the best practices of land valuation were to be subject to the approval of the city assessor. The company was further, upon request, after it had completed its studies of land values, to attend any meetings of local realtors and land authorities in order to defend the unit front-foot acreage value established by the company, should such values be reviewed. Upon the approval of the unit values they were to form the basis for individual appraisal values by the company staff. The company further agreed to have its responsible head of the field organization present at the Battle Creek city board of review following the completion of the work in order to assist in the settlement of complaints and to defend the values placed upon the various properties by the city assessor. The city agreed to pay for this appraisal of the commercial, residential and industrial properties the sum of $33,800, and for the public utility properties $3,800, the amounts to be payable in monthly instalments at the rate of 90 per cent. of the estimated proportion of the work completed each month, and the

balance of 10 per cent. to be paid upon the completion of the appraisal, but upon the election of the city of Battle Creek it might defer the payment of one-third of the contract price until one year after the date of the contract.

We have not set forth all the other details of the contract, but the contract as a whole provided for a scientific reappraisal of all the real property in the city and the property of the public utility corporations. The dominant and outstanding feature of the contract was that the revaluation was to be that of the city assessor.. The company was to make the expert investigation and furnish him with the necessary expert information, records, and all other information as developed by scientific rules in order to give the city a complete reappraisal and revaluation compiled in a form easily kept current. The commission subsequently appointed four nonresidents of the city, evidently nominees and employees of the company, as assistant assessors without salary in order to assist in obtaining the necessary information.

John Conroy, a resident taxpayer, filed a bill of complaint in which he sought to have the contract set aside as *ultra vires*, illegal and as an unlawful usurpation of the powers of the city not permitted by law. He named the city, its mayor, its commissioners and the company as defendants. His main contention is that the contract is *ultra vires* and an unlawful delegation of a municipal power to a stranger.

The city of Battle Creek is incorporated under Act No. 279, Pub. Acts 1909, as amended,* commonly known as the home-rule act. This act was adopted

---

* See 1 Comp. Laws 1929, § 2228 *et seq.* (Comp. Laws Supp. 1940, 1945, § 2228-1 *et seq.,* Stat. Ann. and Stat. Ann. 1945 Cum. Supp. § 5.2071 *et seq.*).—REPORTER.

under the broad provisions of the Constitution of
1908, art. 8, §§ 20, 21. *Common Council of City of
Jackson* v. *Harrington,* 160 Mich. 550. The home-
rule act in granting power to cities coming under
the act, in subdivision 3 of section 4–j (1 Comp.
Laws 1929, § 2240 [Stat. Ann. § 5.2083]), states as
follows:

"Each city may in its charter provide:   *   *   *
"(3) For the exercise of all municipal powers in
the management and control of municipal property
and in the administration of the municipal govern-
ment, whether such powers be expressly enumerated
or not; for any act to advance the interests of the
city, the good government and prosperity of the
municipality and its inhabitants and through its
regularly constituted authority to pass all laws and
ordinances relating to its municipal concerns sub-
ject to the Constitution and general laws of the
State."

In pursuance of the above, chapter 1, § 1, par. (f),
of the city charter grants to the municipal corpora-
tion the following powers:

"To exercise all municipal powers in the manage-
ment and control of municipal property, and in the
administration of the municipal government,
whether such powers be expressly enumerated or
not."

Paragraph (g) of the same section of chapter 1
further gives the city power to do any and all acts
to advance the interests of good government and
prosperity of the municipality and its inhabitants,
et cetera. In chapter 8, § 1, all the corporate powers
of the city are vested in the city commission desig-
nated as a commission consisting of a mayor and
four commissioners. Under the charter the right
of the commission to determine that a revaluation

and reappraisal of the property in the city should be made is, a proper function of municipal power vested in the commission. Further, as to the duties of the city assessor, the charter provides as follows:

Chapter 13, § 2. ''The assessor is hereby authorized and required to perform the same duties that the supervisors of townships under the general laws of the State are required to perform in relation to the assessing of property and levying of taxes for State, county, school and city purposes.''

It might be said at the outset that the valuation and appraisal of urban properties has become almost an engineering science in itself. The duty of a township supervisor in making an assessment as a rule was comparatively simple. It was not difficult to assess farm lands or those of villages and small cities. The correct value of the land could be easily ascertained. The market value could be readily obtained from recent sales and there was no difficulty in making a rather complete and fairly accurate valuation, appraisal and assessment. However, with the growth of cities, valuations became more complicated and a branch of engineering science gradually developed so that it required some engineering science as well as an understanding of the factors entering into an appraisal in order to determine correct values. Proper percentages for depreciation, careful study of local values as affected by costs, recent cash sales, as well as all other elements must be considered. The valuation of real estate and improvements has always been difficult and presents many problems, and even with the applied science for valuation and appraisal, the true value cannot be obtained with mathematical exactitude, but by the application of these modern rules as developed, a much fairer degree of ac-

curacy is arrived at than existed theretofore.*
There is no vice in seeking expert information from
others than residents of the city itself. It seems
almost impossible for one assessor in the city of
the size of Battle Creek† to obtain all this correct
information and to know without assistance the cor-
rect factors and rules in order to arrive at a fair
valuation. It is an implied power of the commission
to obtain such expert knowledge from what in good
faith it evidently must have believed a reliable
source. It must be assumed that the company will
make a very careful study of local conditions in-
cluding costs by gathering all information as to past
sales and all other local data. There even might be
some advantage in obtaining such information
through persons free from all local influences what-
soever. We again repeat that the contract provided
that the city assessor was to have the last word and
final decision, although assisted by experts. There
was no delegation of power whatsoever, and it was
not *ultra vires* for the city to obtain this expert in-
formation. In *Village of Kingsford* v. *Cudlip*, 258
Mich. 144, in discussing the home rule act, we held
that the purpose of the act was to secure to cities
and villages a greater degree of home rule than they

---

* The record does not show that there now exists a very large and
constantly growing bibliography relating to the determination of the
valuation of buildings and lands, and that a new terminology is now
being applied in the application of the various rules and systems. We
shall not discuss the ''Somers,'' ''Bernhard,'' ''Harper,'' ''Hoff-
man,'' and the ''Hoffman-Neill'' systems and rules and the many
other terms used in assessment terminology, as they are not set forth
in the record. We only mention them to show the growth of the
science used in assessment of real estate, a subject on which many
textbooks have been written. There are recognized and tested rules,
formulae, tables and systems that improve assessment procedures and
produce equitable assessments. We mention these facts solely be-
cause so much stress is placed by plaintiff upon the fact that expert
advice of others has been sought by the city commission in order to
secure the correct information.

† The population of the city of Battle Creek, according to the
1940 census, was 43,453.—REPORTER.

formerly possessed and to confer upon them exclusive rights in the conduct of their affairs not in conflict with the Constitution or general laws applicable thereto.

In *City Commission of Jackson* v. *Hirschman,* 253 Mich. 596, we held that the home-rule act not only states what the city may do but leaves many things to be implied from the powers conferred; that considering the purpose of the act, it should be construed liberally and in the home-rule spirit. In *City of Pontiac* v. *Ducharme,* 278 Mich. 474, we quoted with approval from *Gallup* v. *City of Saginaw,* 170 Mich. 195, stating in regard to the home-rule act:

"The new system is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly."

We find no provision either in the charter or the statutes that prohibits the commission from providing the assessor with such assistance in making the assessment as the commission deems necessary. Chapter 13, § 1, of the charter provides that the commission may appoint such assistant assessors as it may deem necessary to perform the work of the office. In chapter 1, § 1, of the charter, the city is empowered:

"(e) To exercise and enjoy all such corporate powers as are hereinafter conferred by this charter, together with such implied and incidental powers as are possessed by municipal corporations of this State;

"(f) To exercise all municipal powers in the management and control of municipal property and in the administration of municipal government,

whether such powers be expressly enumerated or not;

"(g) To do any and all acts, to advance the interest of the city, the good government and prosperity of the municipality and its inhabitants," et cetera.

There is no provision whatsoever prohibiting the city commission from making a contract for the appraisal of all properties in the city so as to assist the assessor in exercising all the duties required of him by the charter and statutes of the State in an equitable manner.

In *McGaughan* v. *West Bloomfield Township*, 268 Mich. 553, we upheld the right of the township to employ a surveyor to determine correct boundary lines for assessment purposes notwithstanding the statutory power to accomplish such result was in the township highway commissioner.

The validity of a contract similar to the one involved here was upheld in *Tietjen* v. *Mayor and Aldermen of Savannah*, 161 Ga. 125 (129 S. E. 653). While ordinarily there might be some merit in plaintiff's claim when applied to nonexpert undertakings, under the circumstances of the instant case, there was nothing *ultra vires* or illegal in the employment of experts to make a reappraisal and revaluation of all of the property. A proper uniform system would lead to the uniformity which is highly necessary for assessments.

It is stipulated in the facts that the valuation of labor and material should be taken as of the year 1940. There is no vice in using the year 1940 as the year in which to make determinations. It aided in uniformity and inasmuch as depreciation would be considered, there was nothing illegal or improper in selecting the year. This particular year was not mentioned in the contract, but the commission evidently agreed that it was proper as it antedated the

war and any inflation caused thereby. Undoubtedly adjustments would have to be made in some particular cases, but the city assessor who was to use these schedules as the basis for his determination of values could make proper adjustments if it was found advisable, and after he made such decision any aggrieved taxpayer has his right of review.

After the plaintiff had filed his bill of complaint, in order to make an immediate and proper determination of the motions for injunction, et cetera, it appears from the record presented to us that no answer was filed but a motion to dismiss was made by defendants. In lieu thereof it was agreed by the parties that the case be heard immediately on a stipulation as to facts. It will be noted that while the word "fraud" was used in the bill of complaint, no specific acts of fraud of any kind whatsoever were mentioned and there is nothing in the stipulation of facts which even intimates that there was any fraud on the part of the commission. Facts showing fraud, not conclusions, must be pleaded. *Spelman* v. *Addison*, 300 Mich. 690.

Other minor issues are raised by plaintiff. He does not believe it proper for the commission to subsequently appoint employees of the company as assistant assessors. There is no stipulation in the contract requiring the commission to do so. This was done only as a matter of convenience so as to facilitate the collecting of the necessary data by enabling these persons, approved by the commission, to go upon the various properties to make the necessary measurements and inspect the construction and material. The commission was acting in pursuance of chapter 13, § 1, of the charter, which provides:

"The assessor's office is hereby declared to be under the department of accounts and finance. The commission may appoint such assistant assessors

as it may deem necessary to perform the work of the office.''

Nowhere is it provided that the assistant assessors must be residents of the city of Battle Creek, nor is there any prohibition restricting the right of the commission to appoint them without compensation from the city. There is a serious question whether plaintiff can raise the issue as to the propriety of these appointments in the present proceedings. See *Marian* v. *Beard*, 259 Mich. 183.

Plaintiff further claims that he was entitled to an injunction restraining defendants from making any payments on the contract until a proper appropriation had been made. No appropriation had been made when the contract was entered into, but under the stipulation of facts agreed upon by the parties to the litigation, it was agreed that there was no evidence of any intent to pay any sums until an appropriation had been made. The judge stated in his opinion that all parties agreed in the stipulation that no appropriation had been made and that payments could not be made until a fund had been made available for that purpose. The judge also found that neither the statute nor the charter of the city of Battle Creek forbade the making of a contract without prior appropriation. It has been held that even under a charter that does contain such a provision, a contract for future services is not incurring an indebtedness within the charter limitations. *Bacon* v. *City of Detroit*, 282 Mich. 150.

The contract with defendant further provides that the company will upon request, after it has completed its studies of land values, arrange and attend meetings with a committee of local realtors and land authorities in order that unit front-foot and acreage values established by the company might be re-

viewed and considered. This is purely advisory. The assessor is not bound by either the conclusions of the company or the committee of realtors and others. Plaintiff or no one else can be harmed by this proceeding. It is only an indication of the fairness of defendants and their desire to obtain correct results. In the last analysis, the city assessor has the final word. No authority is taken from him, but he is given much needed assistance. The contract aims to assist in bringing fair, uniform and equitable assessments. It does not take away the right of taxpayers; if they are not satisfied with the assessment they can appeal to the board of review and to the State tax commission. In addition, the board of supervisors in each county have a duty to examine the assessment rolls of the several townships and wards of cities to ascertain if the respective properties of these units have been equally and uniformly assessed at true cash value, and they have a further power to equalize the assessments by adding to or deducting from the valuation such amount as in their judgment will produce a sum which represents the true cash value thereof. 1 Comp. Laws 1929, § 3422 (Stat. Ann. § 7.52). The constitutional requirement of a "uniform rule of taxation"[*] can be satisfactorily effected through the process of equalization. *Waterford Township* v. *Oakland County Tax Allocation Board*, 312 Mich. 556.

While plaintiff raises many questions in his brief, we have answered all of any merit in our discussion of the facts and law in the case.

The contract calls for expert assistance of a peculiar nature and does not take away the power of the assessor or the right to review and appeal by

---

[*] See Const. 1908, art. 10, § 3.—Reporter.

taxpayers under the particular facts of the case. The judge was correct in dismissing plaintiff's bill of complaint. A public question being involved, no costs are allowed.

CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.