ALLIED SUPERMARKETS, INC v CITY OF DETROIT

1. TAXATION—STATUTES—ASSESSMENTS—REVIEW—PRESUMPTIONS.

A statutory provision that, when the assessment of any property has been reviewed by the State Tax Commission, such assessment shall not be changed for three years without the written consent of the commission creates a presumption that the true cash value, and therefore the assessment, remains the same for the next two succeeding years after the year for which the commission's determination was made (MCLA 211.152).

2. TAXATION—ASSESSMENTS—REVIEW—PRESUMPTIONS.

It is erroneous to characterize the State Tax Commission's determination of the true cash value and assessed value as of a given date as being an actual determination of the true cash value for the two subsequent years, since the statutory freezing of the tax commission's determination of the true cash value and assessed value is merely a presumption as to the subsequent years (MCLA 211.152).

3. TAXATION—STATUTES—ASSESSMENTS—EQUALIZATION—PRESUMPTIONS.

The need for equality among the various taxpayers of a city requires that a statutory presumption of true cash value in subsequent years, arising from a tax commission determination of true cash value for a previous year, be disregarded when the county board of supervisors and the State Board of Equalization determine, pursuant to statutory mandate, that the city is assessed at less than the required 50% level and therefore order an equalization factor be applied to the property in the city to bring the assessments up to the required 50% state equalized level (MCLA 209.4, 211.34, 211.152).

Appeal from Wayne, Maurice L. van Benschoten, J. Submitted Division 1 November 9, 1972, at

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 51 Am Jur, Taxation § 765.

Detroit. (Docket Nos. 12937–12943.) Decided March 27, 1973. Leave to appeal granted, 390 Mich 753.

Complaint by Allied Supermarkets, Inc., against the City of Detroit, the Detroit Board of Education, and Wayne County to recover taxes paid under protest. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Honigman, Miller, Schwartz & Cohn* (by *John Sklar),* for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *Lawrence W. Morgan* and *Arthur Yim,* Assistants Corporation Counsel, for defendant City of Detroit.

*Ostrowski, Wilson, Belanger & Boman,* for defendant Detroit Board of Education on appeal.

*Aloysius J. Suchy,* Corporation Counsel, and *William F. Koney,* Assistant Corporation Counsel, for defendant Wayne County.

Before: LESINSKI, C. J., and FITZGERALD and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The facts of this case are not in dispute. Plaintiff corporation, owner of three warehouses in the City of Detroit, appealed its 1967 tax assessments on those buildings to the State Tax Commission. Being dissatisfied with the assessment determination of the tax commission, plaintiff sought leave to appeal to this Court. This Court denied leave. Plaintiff then sought leave to appeal to the Supreme Court. Leave to appeal was granted by the Supreme Court. See 380 Mich 768 (1968). The Supreme Court held that the tax com-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mission erred in its determination of the "true cash value" of the property in question, and remanded the matter to the tax commission for redetermination. See 381 Mich 693 (1969). In April of 1971, the tax commission determined the true cash value of plaintiff's property as of December 31, 1966, the tax day for 1967. The tax commission then took 50% of the true cash value and ordered that the resulting figure "be placed upon the 1967 assessment roll as the only true and lawful value of the property". The orders further provided that they "shall be for the years 1967, 1968 and 1969 in accordance with the provisions of Section 211.152, CL of Michigan 1948, and supercede all previous orders".[1] No appeal was taken from the tax commission's determination.

Simultaneously with the above outlined appeal of the tax assessment to the tax commission, plaintiff commenced an action in circuit court seeking to recover the excess taxes paid under protest. The circuit court action was held in abeyance during the pendency of the above-noted appeals to and from the tax commission and the redetermination by the tax commission. After the tax commission's redetermination, plaintiff moved for summary judgment on its complaint for excess taxes. While there was no question as to the amount of excess taxes for 1967, defendants asserted that the taxes for 1968 and 1969 should be computed subject to the assessments as equalized for those years. Plaintiff, on the other hand, asserted that the assessments for 1968 and 1969 were fixed by the tax commission's order and were not subject to equalization; and, furthermore, since the tax commission set the assessment at 50% of the true cash value, the process of equalization would raise their

---

[1] See MCLA 211.152; MSA 7.210.

assessment above 50% of the true cash value and thus be in violation of the limitation contained in Const 1963, art 9, § 3. The trial court eventually held that the tax commission's determinations were not subject to the 1968 and 1969 equalization factors and entered judgment accordingly. From that judgment defendants appeal as of right.

The Wayne County Board of Supervisors Committee on Equalization and the State Board of Equalization adopted for the City of Detroit equalization factors of 1.00 for 1967, 1.03 for 1968, and 1.07 for 1969. The fact that an equalization factor of 1.00 was adopted for 1967 indicates that the assessed valuation as equalized and the assessed valuation as appearing on the tax rolls for that year were the same, and that the average assessed valuation for all property in the City of Detroit was the statutorily and constitutionally required 50% of the true cash value. We are thus only concerned with whether the equalization factors for 1968 and 1969 should be applied.

Plaintiff's argument is that the order of the tax commission set the assessed valuation at 50% of the true cash value for the years 1967, 1968 and 1969; and that by applying the equalization factor in 1968 and 1969, the assessed valuation as equalized would be greater than the constitutionally prescribed limit of 50% of the true cash value.[2] In

_____

[2] Const 1963, art 9, § 3 provides:

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50%; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the cases or classes on which it operates."

other words, an assessed valuation as determined by the tax commission is not subject to equalization. The trial court agreed with plaintiff and entered judgment accordingly. We disagree.

We would again reiterate what the tax commission did in the instant case. Upon review pursuant to MCLA 211.152; MSA 7.210, the tax commission determined the true cash value of the properties in question as of December 31, 1966, the tax day for 1967. Pursuant to the requirements of MCLA 211.150; MSA 7.208, the tax commission took 50% of the true cash value as the assessed value, as required by MCLA 211.27; MSA 7.27, and ordered the same to "be placed upon the 1967 assessment roll as the only true and lawful value of the property". These orders further provided that they "shall be for the years 1967, 1968 and 1969 in accordance with the provisions of Section 211.152, CL of Michigan 1948 * * * ".

MCLA 211.152; MSA 7.210 provides, in pertinent part that:

"When the assessment of any property has been reviewed by the commission and herein authorized, such assessment shall not be changed for a period of three years without the written consent of the commission."

Plaintiff asserts that by virtue of the above quoted statutory language, which was incorporated by reference in the order of the tax commission, the tax commission's determination of the true cash value for 1967 and resulting assessment at 50% of the true cash value for 1967 constituted a determination of the true cash value and 50% assessment for 1968 and 1969. Plaintiff misconstrues the intention and purpose of this statutory provision.

The obvious purpose of the above quoted portion

of the statute is to avoid the situation whereby the taxing unit would, after a reduction in assessment for a given tax year by the tax commission, raise the assessment in the next succeeding tax year, and, thereby, start the process of appeal to the tax commission anew. The obvious intent of this provision is to create a presumption that the true cash value, and therefore the assessment, remained the same for the next two succeeding years after the year for which the commission's determination was made. The fact that this is merely a presumption is evidenced by the provision that said assessment can be changed by written consent of the commission. Since this statutory "freezing" of the tax commission's determination of the true cash value and assessed value is merely a presumption as to the subsequent years, it is erroneous to characterize the tax commission's determination of the true cash value and assessed value as of December 31, 1966, as being an actual determination of the true cash value and assessment for 1968 and 1969. The presumption is valid only when the property has not become subject to some factor which would increase or decrease its true cash value (*e.g.*, general inflation or deflation; destruction of, addition to, or modification of some portion of the property; etc.).

This brings us to the question which is determative of this appeal, that being: Under the circumstances in this case, are the assessments of plaintiff's properties subject to equalization in the years 1968 and 1969?

Plaintiff's assessments were fixed at 50% of their true cash value in 1967. The 1.00 equalization factor for the City of Detroit for 1967 is indicative of the fact that all other property in the City of Detroit had an average assessed value of

50% of the true cash value. Thus, in 1967 plaintiff's assessments were fixed at the same rate as for the other property owners for that city. In 1968 and 1969, the Wayne County Board of Supervisors and the State Board of Equalization determined, pursuant to statutory mandate,[3] that the City of Detroit was assessed at less than the required 50% level; and therefore ordered that an equalization factor be applied to the property in the city to bring the assessments up to the required 50% state equalized level. Of necessity, whatever factor caused the city as a whole to fall below the 50% level must be presumed to affect all property owners therein equally.[4]

Under these circumstances, the need for equality among the various taxpayers of the City of Detroit requires that the presumption contained in MCLA 211.152, *supra,* be disregarded. Plaintiff has failed to demonstrate that he has been forced to carry an unfair proportion of the tax load. Plaintiff stands in no different position with respect to the 1968 and 1969 assessments than any other Detroit property owner. Not only would the freeing of defendant of its duty to pay taxes on the assessment as equalized not serve to promote an equitable result, it would rather serve to afford plaintiff a special benefit and thereby defeat the law's attempt to promote equity. Whatever injury,

[3] MCLA 211.34; MSA 7.52 and MCLA 209.4; MSA 7.604 respectively.

[4] While in the best of all possible worlds each individual piece of property would be reassessed yearly, such an undertaking would be humanly impossible to effectuate. The fact that Detroit's assessments fell below the 50% level undoubtedly reflects the fact that the city failed to adjust the assessments to reflect the general increase in property values due to inflationary pressures. Absent the ability to individually assess each individual piece of property annually, the only possible way to insure some degree of equality among the property owners is to engage in the assumption that factors causing the change in value affect all property owners equally.

if any, which might have resulted to plaintiff inured equally to all property owners in the city and is thereby beyond the capability of the courts to rectify. See *Sloman-Polk Co v Detroit,* 261 Mich 689 (1933).

Under these circumstances, the plaintiff's taxes for 1968 and 1969 should be computed on the basis of the assessment as equalized.[5] Since plaintiff has failed to demonstrate that the 1968 and 1969 assessments as equalized were, in fact, in excess of 50% of the true cash value, it is unnecessary to reach the question of whether the assessments as equalized were constitutionally infirm.

Reversed and remanded for entry of judgment in accordance with this opinion. No costs, a public question being involved.

---

[5] We would also note that the tax commission had always assumed that their determinations were subject to equalization, and to that end, their orders now provide:

"It is hereby ordered that an assessment of $_____ be placed upon the assessment roll as the only true and lawful value of such property, subject to the process of equalization."