ALLIED SUPERMARKETS, INC v CITY OF DETROIT

1. TAXATION—STATUTES—ASSESSMENTS—STATE TAX COMMISSION—
   REASSESSMENT—EQUALIZATION.

   A statute permits an individual taxpayer to seek a hearing before
   the State Tax Commission to determine if assessments have
   been made in compliance with law, if not, the commission may
   indicate "the true and lawful assessment" and when such a
   review occurs "such assessment shall not be changed for a
   period of 3 years without the written consent" of the commis-
   sion; this prohibition of reassessment does not prevent the
   assessment from being equalized according to law (MCLA
   211.152).

2. TAXATION—EQUALIZATION—ASSESSMENTS—UNIFORMITY OF TAXA-
   TION.

   Equalization is related to yet distinct from assessment; the proc-
   ess of equalization is designed to enhance the goal of uniform-
   ity.

3. TAXATION—EQUALIZATION—ASSESSMENTS—STATE TAX COMMISSION
   —STATUTES—TAX ROLLS—TAX STATEMENTS—ASSESSORS.

   Local taxing authorities' actions in applying equalization factors
   to assessments levied by the State Tax Commission on plain-
   tiff's property and not altering the assessment inposed by order
   of the commission but applying the equalization factors, as was
   done to all other taxpayers, were required by a statute which
   provides that tax rolls and statements show "the latest state
   equalized valuation for each item of property" and that the
   assessor is then required to "spread the taxes on the tax roll on
   the state equalized valuation for each item of property" (MCLA
   211.24b).

4. TAXATION—EQUALIZATION—ASSESSMENTS—STATE TAX COMMISSION
   —EQUAL TAXATION—UNIFORMITY OF TAXATION.

   A property owner is not entitled to be excluded from the equali-
   zation process because the assessment of its property has been

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 51 Am Jur, Taxation §§ 741, 742, 790–792.

set by order of the State Tax Commission; it is of the very essence of taxation that it be equal and uniform, and the burden being common there should be common contribution to discharge it and equalization is designed to serve these values.

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and Fitzgerald and Van Valkenburg, JJ., reversing and remanding Wayne, van Benschoten, J. Submitted January 8, 1974. (No. 18 January Term 1974, Docket No. 54,808.) Decided April 16, 1974.

45 Mich App 571 affirmed.

Complaint by Allied Supermarkets, Inc., against the City of Detroit, the Detroit Board of Education, and Wayne County to recover taxes paid under protest. Judgment for plaintiff. Defendants appealed to the Court of Appeals. Reversed and remanded. Plaintiff appeals. Affirmed and remanded.

*Honigman, Miller, Schwartz & Cohn* (by *John Sklar*), for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *Arthur Yim* and *Lawrence W. Morgan,* Assistants Corporation Counsel, for City of Detroit.

*Aloysius J. Suchy,* Corporation Counsel, and *William F. Koney,* Assistant Corporation Counsel, for Wayne County.

*Ostrowski, Wilson, Belanger & Bowman,* for Detroit Board of Education.

M. S. COLEMAN, J. Plaintiff is contesting the Court of Appeals reversal of the trial court's order awarding plaintiff a refund on taxes paid to de-

fendants under protest. See 45 Mich App 571; 207 NW2d 190 (1973).

## FACTS

This particular action is but one part of a long legal battle. The disputes have involved the accuracy of defendants' assessments of plaintiff's warehouses and the application of equalization factors to assessments levied by the State Tax Commission (STC) for the years 1967, 1968 and 1969.

In their first appearance before this Court, the parties sought to clarify procedural aspects of actions before the STC. 381 Mich 693; 167 NW2d 264 (1969). The case was remanded for a rehearing before the STC. This was to include a recomputation of the valuation and assessment of plaintiff's property based on competent evidence.[1]

After reexamination, the STC on March 23, 1971 entered the orders which are the basis for the instant controversy. In each, the STC noted that taxable property in Detroit "is assessed at a mathematical average of 50.00%" of true cash value. In each, the STC insured that the assessment was "in accordance with the true cash value, reduced to the assessment level of all other real and personal property within the City of Detroit." In each, the STC ordered that its assessment

"be placed upon the 1967 assessment roll as the only true and lawful value of such property. This order shall be for the years 1967, 1968 and 1969 in accordance with the provisions of section 211.152, CL of Michigan 1948, and supersedes all previous orders."

In three instances the defendants' assessments

---

[1] See 16 Wayne L Rev 657.

were too high and a reduction was ordered. Those orders were not appealed.

Plaintiff had previously instituted suit for the recovery of excess taxes paid. Subsequent to the STC orders, plaintiff moved for summary judgment. While not contesting plaintiff's right to a refund, defendants sought to subject the refunds for 1968 and 1969 to equalization procedures. Plaintiff objected claiming that the assessments for those years were frozen by the STC orders and not subject to equalization. The trial court accepted plaintiff's argument.

In reversing, the Court of Appeals said the STC determined the true cash value of the property and assessed it at 50 percent of that value. The statute freezing such assessments for three years was intended "to create a presumption that the true cash value, and therefore the assessment, remained the same for the next two succeeding years". Such presumption is valid so long as the property does not "become subject to some factor which would increase or decrease its true cash value".

The Court noted that the equalization factor applicable to the properties in 1967 was 1.00 while those in 1968 and 1969 were 1.03 and 1.07. In those later years, the factors were "applied to the property in the city to bring the assessments up to the required 50% state equalized level". The Court concluded that plaintiff's assessment like that of all other property owners was subject to equalization.

## STATUTES

The assessment levy and collection of property taxes is governed by MCLA 211.1–211.157; MSA

7.1–7.214. MCLA 211.24; MSA 7.24 requires the supervisor or assessor to "estimate, according to his best information and judgment, the true cash value of every parcel of real property" and enter this onto an assessment roll.

These assessments are presented to a board of review. The board checks the accuracy of assessments and hears complaints of property owners. See MCLA 211.29–211.30; MSA 7.29–7.30. Further appeal may be taken to the STC.

MCLA 211.152; MSA 7.210 permits an individual taxpayer to seek a hearing before the STC to determine if assessments have been made in compliance with law. If not, the STC may indicate "the true and lawful assessment". When a review of an assessment occurs under this section, "such assessment shall not be changed for a period of 3 years without the written consent" of the STC.

MCLA 211.34; MSA 7.52 requires that county commissioners each year examine the assessment rolls to insure that all property "has been equally and uniformly assessed at true cash value". If there is an inequality, they must equalize to "produce a sum which represents the true cash value" of the property. After equalization the commissioners record "the aggregate valuation" of the taxable property. The assessment rolls are not certified and filed until "such rolls have been equalized".

## ISSUE

Plaintiff does not contest the validity of the assessments. Plaintiff does not contest the validity of the equalization factors. Plaintiff's claim is that unlike all other property owners within the particular governmental unit, its assessment is not subject to equalization because the assessment was

ultimately determined by the State Tax Commission rather than by local authorities.

## DISCUSSION

In each of the contested orders the STC determined the true cash value of this property. Noting that taxable property in Detroit is assessed at 50 percent of true cash value, the STC then determined what the figure should be for the 1967 assessment roll. By statute the properties were not subject to reassessment until 1970.

The Court of Appeals believed this prohibition of reassessment is a statutory presumption which can be rebutted by showing a fluctuation in the true cash value of the property. Some believe the provision was designed to prevent yearly litigation between the contending parties on the issue of assessment. Whatever be the purpose of this language, it does not prevent the assessment from being equalized according to law.

A concise and fair description of the taxing process at issue is found in *Ypsilanti Twp Supervisor v State Tax Commission,* 386 Mich 343; 192 NW2d 227 (1971). Citing a goal of "equality of treatment of taxpayers and of governmental units" the Court noted that such pursuit "involves two separate but intertwining paths".

If an individual is aggrieved by an assessment, he must seek redress from the township supervisor, the board of review and finally the STC. Equalization, however, is a function of the county commissioners. MCLA 211.34 permits appeals by "[a]ny supervisor of any township or city or the intermediate district board of education or the board of education of an incorporated city or village aggrieved" by the commissioners' actions. The

STC may investigate and make adjustments if it "decides that the valuations * * * have been improperly equalized".

One of the "separate but intertwining paths" leading to equality of treatment is the assessment of property. This path includes procedures permitting individual taxpayers to appeal allegedly unfair assessments.

The other path is equalization. This follows the assessment and examination by the board of review. The county commissioners have a duty "to equalize the tax rolls of the various units of local government so that the total property tax base of the county would be equitably allocated". *Ypsilanti Twp Supervisor,* p 355. Equalization is related to yet distinct from assessment.

The process of equalization is designed to enhance the goal of uniformity. *In re Appeal of General Motors Corp,* 376 Mich 373; 137 NW2d 161 (1965) noted that assessments "often bear no relation to the actual cash value of the property or to the level of assessments in adjoining governmental units." The Court said at p 379:

"Equalization procedures attempt to meet the problem, it being the purpose of these procedures to adjust or correct all of the different modes of assessment to achieve uniformity among governmental units within a county and uniformity among all of the counties of the state. See *School Dist No 9, Pittsfield Twp, Washtenaw County, v Washtenaw County Board of Supervisors,* 341 Mich 388, 405 [67 NW2d 163 (1954)], and *Calumet & Hecla, Inc., v Township of Allouez,* 363 Mich 671 [110 NW2d 585 (1961)]."

In discussing whether the standard of cash value or uniformity should predominate, the Court said "the principle of equal treatment regardless of cash value is now recognized as being primary".

Similar is *Conroy v Battle Creek,* 314 Mich 210; 22 NW2d 275 (1946) where the Court said insuring uniformity of taxation "can be satisfactorily effected through the process of equalization". Also see *Waterford Twp v Oakland County Tax Allocation Board,* 312 Mich 556; 20 NW2d 497 (1945).

Defendants did not alter the assessment imposed by order of the STC. Defendants did apply equalization factors to plaintiff's property as was done to all other taxpayers. Assessments and equalization are not coincident. They are separate although related.

Plaintiff is not entitled to be excluded from the equalization process because the assessment of its property has been set by order of the STC. Justice COOLEY in his work on *Constitutional Limitations* (1st ed) said "it is of the very essence of taxation that it be equal and uniform". The burden being common "there should be common contribution to discharge it". (p 495.) Equalization is designed to serve these values. It has done so here.

We agree with the results reached by the Court of Appeals.

Plaintiff argues that defendants' application of equalization factors raises their assessment to more than the constitutional limit.

Article 9, § 3 of the 1963 Const states that the Legislature "shall provide for" the enactment of general ad valorem taxation of real and tangible personal property, and "shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50%; and for a system of equalization of assessments".

The Legislature has, in accordance with the constitutional mandate, "provided" for the uni-

form general ad valorem taxation of real and tangible personal property. It has provided for the determination of true cash value of such property. It has provided that the proportion of true cash value at which such property shall be uniformly assessed shall not exceed 50%. It has provided for a system of equalization of assessments.

There is necessarily some tension between the concept of uniformity of assessment and an absolute limitation on the amount at which property may be assessed. On the other hand, we also recognize that, unless whatever constitutional limitations there may be on the power of the assessor are enforced, the millage limitations in the constitution and the limited exceptions authorized by voter approval of higher millage limitations could be subverted.

However, we have concluded that it would not be wise to attempt to resolve the important constitutional question which plaintiffs raise in the present context and on the basis of the insufficient information in the record presently before us.

We affirm the Court of Appeals and remand for entry of judgment in accordance with this opinion. No costs, this being a public question.

T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, Williams, and Levin, JJ., concurred with M. S. Coleman, J.

J. W. Fitzgerald, J., did not sit in this case.