*290 O’Connell, P.J.
In these five cases consolidated on appeal, plaintiffs[1] appeal as of right from various trial court orders from the Oakland and Wayne Circuit Courts. In each case, we are asked to decide whether Const 1963, art 9, § 3 provides that plaintiffs are entitled to taxable values of real property that, as percentages of true cash value, equal the average ratio of taxable value to true cash value of all other property in the taxing district.[2] Because we agree with the trial courts’ conclusion in each case that Const 1963, art 9, § 3, as amended by Proposal A, imposes no such requirement, we affirm in all cases.[3]
I. PROCEDURAL HISTORY
In Docket No. 224234, plaintiffs appeal as of right from the December 10, 1999, order of the trial court granting summary disposition in favor of defendant *291 city of Troy pursuant to MCR 2.116(C)(8). In Docket No. 224813, plaintiffs appeal as of right from the January 19, 2000, order of the trial court dismissing with prejudice plaintiffs’ claim against defendant Canton Township.[4] In Docket No. 226224, plaintiffs appeal as of right from the March 13, 2000, order of the trial court granting defendant city of Oak Park’s motions for summary disposition pursuant to MCR 2.116(C)(8) and (10). In Docket No. 228106, plaintiff appeals as of right from the June 14, 2000, order of the trial court denying plaintiff’s motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), and granting judgment in favor of defendant Southfield Township pursuant to MCR 2.116(I)(2). Finally, in Docket No. 232132, plaintiffs appeal as of right from the January 4, 2001, order of the trial court finding no cause of action on behalf of plaintiffs and entering judgment in favor of defendant city of Southfield.
Plaintiffs filed the complaints in the Wayne and Oakland Circuit Courts, alleging that the taxable values of plaintiffs’ properties were of percentages of true cash value greater than the average percentage of all other properties defendants taxed in the applicable city or township. Plaintiffs further alleged that because Const 1963, art 9, § 3 requires uniformity in taxation, defendants’ method of taxing plaintiffs’ real property violated our state constitution. In the complaints, plaintiffs sought a declaratory judgment holding that defendants taxed plaintiffs in violation of the state constitution, and a refund for “the unconstitutional portion” of plaintiffs’ taxes.
*292 In each case, the trial courts concluded that plaintiffs’ argument was without merit. Specifically, the trial courts rejected plaintiffs’ assertion that Const 1963, art 9, § 3 required uniformity in the ratio of taxable value to true cash value among all real property in the taxing district. The trial courts also recognized that by accepting Proposal A, the electorate provided for a cap on real property tax assessments. Specifically, the courts recognized that taxes are now levied according to a property’s taxable value, and because a property’s taxable value is contingent on whether its owner retains or sells it, the percentages of taxable value to true cash value among identical pieces of property will not be uniform. Plaintiffs now appeal as of right in all five cases.
H. STANDARD OF REVIEW
In each case, with the exception of the court’s ruling in Docket No. 232132,[5] the lower courts ruled in favor of defendants in the summary disposition context. This Court reviews de novo a trial court’s decision regarding a motion for summary disposition. Spiek v Dep’t of Transportation, 456 Mich 331, 337; 572 NW2d 201 (1998). In Docket Nos. 224234, 226224, and 228106, the trial courts observed that summary *293 disposition was granted pursuant to MCR 2.116(C)(8) and (10).[6]
A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted. The motion should be granted if no factual development could possibly justify recovery. [Beaudrie v Henderson, 465 Mich 124, 129-130; 631 NW2d 308 (2001), citing Spiek, supra at 337.]
Further, in Maiden v Rozwood, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court articulated the standard of review for summary disposition motions brought under MCR 2.116(C)(10):
A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.
Moreover, in Docket Nos. 224813 and 228106, the trial courts denied plaintiffs’ motion for summary disposition and granted judgment in favor of defendants pursuant to MCR 2.116(I)(2). “ ‘Summary disposition is properly granted [under this rule] to the opposing party if it appears to the court that that party, rather than the moving party, is entitled to judgment.’ ” Gyarmati v Bielfield, 245 Mich App 602, 604; 629 *294 NW2d 93 (2001) (alteration in original), quoting Sharper Image v Dep’t of Treasury, 216 Mich App 698, 701; 550 NW2d 596 (1996).
Finally, whether the Uniformity of Taxation Clause is violated where the ratio of taxable value to true cash value of plaintiffs’ real property is not uniform with the average ratio of taxable value to true cash value for all real property in a city or township is a question of law. This Court reviews de novo such questions of law. See, e.g., TIG Ins Co, Inc v Dep’t of Treasury, 464 Mich 548, 557; 629 NW2d 402 (2001).
HI. ANALYSIS
Plaintiffs argue that pursuant to the Uniformity of Taxation Clause of Const 1963, art 9, § 3, they are entitled to taxable values that, as a percentage of the true cash value of their real property, are uniform with the average ratio of taxable value to true cash value for all real property in the city or township where plaintiffs’ real property is located. Plaintiffs further claim that they are not seeking to alter the property taxation system in Michigan; rather, they contend that they are only seeking a reduction of their taxable values to the extent that they mirror the average ratio of taxable value to true cash value for all real property in the taxing district.
In response, defendants assert that nothing in the plain language of Const 1963, art 9, § 3 requires uniformity in the ratio of taxable value to true cash value; rather, the provision only requires uniformity in assessment. Defendants also argue that because of the cap on property assessments implemented with the passage of Proposal A, taxable values by their *295 nature are inimical to uniformity because they are dependent on how long a property owner has owned the property or how quickly the property rises in value. Defendants also contend that by accepting Proposal A’s mandate that property assessments be capped, the electorate could not have intended that taxable values remain uniform. According to defendants, by enacting 1994 PA 415, the Legislature facilitated the electorate’s intention to cap the increase in property assessments by adding the term “taxable value” to the General Property Tax Act (gpta), MCL 211.1 et seq.
The Attorney General, the State Tax Commission (STC), and the Michigan Townships Association (mta) support defendants in these appeals. In their briefs on appeal, the Attorney General, the STC and the mta note that before Proposal A, ad valorem property taxes in Michigan were assessed on the basis of state equalized valuation (sev). Once the electorate passed Proposal A, it authorized a narrow exception to the uniformity requirement, allowing the ratio of taxable value to true cash value to be disparate depending on whether property is sold or retained by an owner. Further, the Attorney General, the STC, and the mta observe that pursuant to Proposal A, property taxes are now spread against taxable value, rather than sev, and it was the clear intent of the electorate that the ratio of taxable value to true cash value need not remain uniform.
A OVERVIEW OF REAL PROPERTY TAXATION IN MICHIGAN
Because plaintiffs’ main issue on appeal involves real property taxation, a brief overview of how real property is taxed in Michigan is instructive. At issue *296 here is the uniform ad valorem taxation of real property mandated by Const 1963, art 9, § 3. In Michigan, our state constitution has required the uniform ad valorem taxation of real property since 1850. Fino, The Michigan State Constitution: A Reference Guide (Westport: Greenwood Press, 1996), pp 180-181. See also Const 1850, art 14, §§ 11, 12; Const 1908, art 10, §§ 3, 7.[7] An ad valorem tax is “ ‘[a] tax levied on property or an article of commerce in proportion to its value as determined by assessment or appraisal.’ ” Meijer v Midland, 240 Mich App 1, 3, n 1; 610 NW2d 242 (2000), quoting Black’s Law Dictionary (6th ed).
*297 At the heart of the instant cases is the proper interpretation of Const 1963, art 9, § 3, as amended by Proposal A,[8] which provides as follows:
The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Eveiy tax other than the general ad valorem property tax shall be uniform upon the class or *298 classes on which it operates. A law that increases the statutory limits in effect as of February 1, 1994 on the maximum amount of ad valorem property taxes that may be levied for school district operating purposes requires the approval of% of the members elected to and serving in the Senate and in the House of Representatives.
As noted, Const 1963, art 9, § 3 expressly provides that real property shall not be assessed in excess of fifty percent of its true cash value. MCL 211.27(1) defines “cash value” as “the usual selling price at the place where the property, to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale . . . .” True cash value is synonymous with fair market value. Great Lakes Division of Nat’l Steel Corp v Ecorse, 227 Mich App 379, 389; 576 NW2d 667 (1998). Although not directly relevant to the instant appeals, it is well settled that
[t]he three most common approaches for determining true cash value are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach. However, variations of these approaches and entirely new methods may be useful if found to be accurate and reasonably related to fair market value. Meadowlands Ltd Dividend Housing Ass’n v Holland, 437 Mich 473, 485; 473 NW2d 636 (1991). [Great Lakes, supra at 390 (citation omitted).]
See also Meijer, supra at 4, n 5.
After the electorate accepted Proposal A in a special statewide election on March 15, 1994, the Legislature enacted 1994 PA 415 to revise relevant portions of the gpta, effective December 29, 1994. Specifically, MCL 211.27a, as amended by 1994 PA 415, now provides:
*299 (1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.
(2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
(a) The property’s taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property’s taxable value in the immediately preceding year is the property’s state equalized valuation in 1994.
(b) The property’s current state equalized valuation.
(3) Upon a transfer of ownership of property after 1994, the property’s taxable value for the calendar year following the year of transfer is the property’s state equalized valuation for the calendar year following the transfer. [Emphasis supplied.][9]
MCL 211.27a(6) and (7) also specify what does and does not constitute a “transfer of ownership.” Further, MCL 211.24b, as amended by 1994 PA 415, now provides that real property taxes are assessed on the basis of a parcel of property’s “taxable value.” The former language of MCL 211.24b specified that taxes were assessed on the basis of a parcel of property’s state equalized valuation. See School Dist No 9, Pittsfield Twp, Washtenaw Co v Washtenaw Co Bd of Supervisors, 341 Mich 388, 406-407; 67 NW2d 165 (1954); Consumers Power Co v Muskegon, 13 Mich App 334, 341; 164 NW2d 398 (1968). The current version of MCL 211.24b provides in pertinent part:
*300 (1) The tax roll and the tax statement shall clearly set forth the latest taxable value for each item of property.
(2) The supervisor or assessor shall spread the taxes on the tax roll on the taxable value for each item of property. [Emphasis supplied.]
Similarly, MCL 211.24(1) requires the property assessor, in preparing the assessment roll, to “estimate, according to his or her best information and judgment, the true cash value and assessed value of every parcel of real property and set the assessed value down opposite the parcel.” Subsection 24(1) of the gpta also requires the assessor to “calculate the tentative taxable value of every parcel of real property.” Once the assessment rolls are prepared, they are reviewed by the local board of review. MCL 211.29. Taxpayers protesting their tentative property valuation may then appear before the local board of review. MCL 211.30. Once the board of review indorses the assessment roll, MCL 211.30(3), the board of commissioners of each county reviews the roll to determine “whether the real and personal property in the respective townships or cities ha[ve] been equally and uniformly assessed at true cash value.” MCL 211.34(2).
If the county board of commissioners concludes that an inequality exists, “they must equalize to ‘produce a sum which represents the true cash value of the property.’ ” Allied Supermarkets, Inc v Detroit, 391 Mich 460, 464; 216 NW2d 755 (1974), quoting MCL 211.34. Real property valuations are then equalized at the state level as well. MCL 209.1 et seq.; Richland Twp v State Tax Comm, 210 Mich App 328, 332; 533 *301 NW2d 369 (1995); Brittany Park Apartments v Harrison Twp, 104 Mich App 81, 87; 304 NW2d 488 (1981). As Justice Coleman observed in Allied Supermarkets, supra at 466, the goal of equalization is to produce uniformity in taxation. See also Conroy v Battle Creek, 314 Mich 210, 225; 22 NW2d 275 (1946) (“The constitutional requirement of a .‘uniform rale of taxation’ can be satisfactorily effected through the process of equalization.”); O’Reilly v Wayne Co, 116 Mich App 582, 594; 323 NW2d 493 (1982) (“The purpose of equalization is to adjust or correct all of the different modes of assessment to achieve uniformity among government units within a county and uniformity among all of the counties of the state.”).
Legislative analysis reflects that the Legislature amended the gpta following the passage of Proposal A to “flesh out in statute” the new concept of taxable value. House Legislative Analysis, HB 5945 (Second Analysis), January 9, 1995, p 1.
Typically, [before Proposal A,] property has been assessed for tax purposes based on market value; the millage rate is applied to the state equalized valuation (sev), which is supposed to be set at 50 percent of market value. But with the [Proposal A] assessment cap in place, a parcel of property will have both a state equalized valuation and a taxable value, which might or might not be the same amount. Property whose value is increasing faster than the rate of inflation will, due to the cap, have a taxable value below (perhaps, over time, far below) state equalized valuation. Upon its sale or other transfer of ownership, the property’s taxable value and sev would be the same until the cap was applied once again. [/&]
Because plaintiffs’ challenge to defendants’ methods of taxing real property requires us to consider whether ratios of taxable values to true cash value *302 that are not congruent with the average for a whole city or township violate the Uniformity of Taxation Clause, a review of the purpose underlying this clause is also helpful.
B. THE PURPOSE OF MICHIGAN’S UNIFORMITY OF TAXATION CLAUSE
In one of the earlier pronouncements discussing the purpose of Michigan’s Uniformity of Taxation Clause, Chief Justice Martin, considering Const 1850, art 14, opined in People ex rel St Mary’s Falls Ship Canal Co v Auditor General, 7 Mich 84, 90 (1859):
This provision of the constitution has no reference to the power to exempt, or to remit taxes; which is, and necessarily must be, to a great extent, left to the discretion of the legislature. Its design was to secure, to every portion of the state, and to every class of property taxed, a uniform rate,—to secure equality, so that property in one quarter should not be taxed at a higher rate than in another, or the same kind taxed unequally. The legislature has the power of prescribing the subjects of taxation, and of exemption, but it can not arbitrarily tax property according to locality, kind, or quality, without regard to value, but in this respect it must act by uniform rules. [Citation omitted.]
Chief Justice Cooley’s observations regarding taxation in Michigan, offered in a different context, are likewise illuminating.
The control of the state in regard to taxation is certainly very great, but it is by no means unlimited, and it can not be exercised in an arbitrary manner, nor without regard to those principles of justice and equality on which it is based. It is of the essence of all taxation that it should compel the discharge of the burden by those upon whom it rests; and if the state should attempt to compel any single county by taxation to pay the salaries of the state officers, or the *303 expenses of the legislature, no one would for a moment doubt that, while the act was arbitrary, unjust and tyrannical, it was also unconstitutional. [Ryerson v Utley, 16 Mich 269, 276 (1868).]
Further, in Pine Grove Twp v Talcott, 86 US (19 Wall) 666, 675; 22 L Ed 227 (1873), the United States Supreme Court considered Const 1850, art 14, § 11, and Justice Swayne, writing for the Court, discussed this constitutional provision’s purpose:
The object of this provision was to prevent unjust discriminations. It prevents property from being classified and taxed as classed, by different rules. All kinds of property must be taxed uniformly, or be entirely exempt. The uniformity must be co-extensive with the territory to which the tax applies. If a State tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout such county or city.
See also Williams v Mayor of Detroit, 2 Mich 560, 570 (1853) (state constitution “enjoins a just principle of equality in regard to all public burdens, and prescribes as a limit to the exercise of the taxing power, that common burdens should be sustained by common contributions, regulated by some fixed general rule and apportioned according to some uniform ratio of equality”) (emphasis in original); Wood v Rockwood, 328 Mich 507, 511; 44 NW2d 163 (1950) (recognizing that to satisfy the Uniformity of Taxation Clause, a tax must be “levied in accordance with some definite plan designed to bring about a just distribution of the burden”); Armco Steel Corp v Dep’t of Treasury, 419 Mich 582, 592; 358 NW2d 839 (1984) (recognizing that the prevailing principle of the Uniformity of Taxation Clause is that of equal treatment for similarly situated taxpayers); Grand Traverse Co v *304 Michigan, 450 Mich 457, 478; 538 NW2d 1 (1995) (concluding that Const 1963, art 9, § 3 requires that “uniformity must be coextensive with the territory to which it applies”).
Likewise, in East Grand Rapids School Dist v Kent Co Tax Allocation Bd, 415 Mich 381, 395-396; 330 NW2d 7 (1982), our Supreme Court echoed its earlier statement in Huron-Clinton Metropolitan Authority v Bds of Supervisors of Five Counties, 304 Mich 328; 8 NW2d 84 (1943), in construing the language of Const 1963, art 9, § 3 before its amendment in 1994.
“ ‘What is meant by the words ‘taxing by a uniform rule?’ And to what is the rule applied by the constitution? No language in the constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. “Taxing” is required to be “by a uniform rule;” that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation.’ ” [Huron-Clinton Metropolitan Authority, supra, quoting Exchange Bank of Columbus v Hines, 3 Ohio St 1, 15 (1853).]
See also Edward Rose Building Co v Independence Twp, 436 Mich 620, 640; 462 NW2d 325 (1990) (The uniformity requirement of the Michigan Constitution is concerned with uniformity in the mode of assessment and the rate of taxation and “compels the assignment of values to property upon the basis of the true cash value of the property . . . .”).
Most recently, our Supreme Court has recognized that there is no discernible difference between the *305 Equal Protection Clause and the Uniformity of Taxation Clause when considering the constitutionality of a statute. TIG, supra at 563; see also Taylor Commons v City of Taylor, 249 Mich App 619; 644 NW2d 773 (2002); Syntex Laboratories v Dep’t of Treasury, 233 Mich App 286, 290; 590 NW2d 612 (1998); Ann Arbor v Nat’l Center for Mfg Sciences, Inc, 204 Mich App 303, 306; 514 NW2d 224 (1994).
C. PRINCIPLES OF CONSTITUTIONAL INTERPRETATION
As mentioned, these five consolidated cases require us to interpret the current version of Const 1963, art 9, § 3, as amended by Proposal A. In Michigan, the rules of constitutional interpretation are well settled. Specifically, this Court is guided by the principle that a constitutional provision is to be interpreted in accordance with the “common understanding.” American Axle & Mfg, Inc v Hamtramck, 461 Mich 352, 362; 604 NW2d 330 (2000). Thus, we must strive to effectuate the electorate’s intent in ratifying the amendment of Const 1963, art 9, § 3. People v Bulger, 462 Mich 495, 507; 614 NW2d 103 (2000).
“A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. ‘For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.’ ” [Bolt v Lansing, 459 Mich 152, 160; 587 NW2d 264 (1998) (emphasis in original), quoting Traverse *306 City School Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), in turn quoting Cooley’s Const Lim 81.]
Where the people’s intent in adopting the provision in question can be gleaned from a review of the instrument itself, our Supreme Court has cautioned that further construction is inappropriate. Michigan Coalition of State Employee Unions v Civil Service Comm, 465 Mich 212, 222; 634 NW2d 692 (2001).
“The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. . . . ‘Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.’ ” [American Axle, supra at 362 (emphasis in original), quoting Cooley, Constitutional Limitations, (Little, Brown and Company, 1868), p 55.]
As an initial matter, plaintiffs point to our Supreme Court’s decision in In re Appeal of General Motors Corp, 376 Mich 373; 137 NW2d 161 (1965),[10] arguing *307 that that decision entitles plaintiffs to “uniform assessment.” In this vein, plaintiffs point to the language in Const 1963, art 9, § 3 that “property shall be uniformly assessed” to support their argument. Plaintiffs further argue that the Supreme Court interpreted this specific language in General Motors, supra, to require the relief that plaintiffs seek in the instant cases. According to plaintiffs, the electorate was aware of the Supreme Court’s interpretation of this language when it ratified Proposal A in March 1994, and therefore the electorate confirmed plaintiffs’ rights in this regard. Plaintiffs further argue that the term “taxable value” is synonymous with “assessment” because both refer to the value on which taxes are based, and therefore plaintiffs are entitled to uniform taxable values under Const 1963, art 9, § 3 as amended.
In General Motors, supra at 376, the plaintiff, General Motors Corporation, appealed to the Supreme Court from the State Tax Commission’s personal property assessment. In assessing the plaintiff’s personal property, the stc had placed the assessment at the average level for all personal property in the city *308 of Livonia, but had disregarded the average level of assessment for real property. Id. The Supreme Court, in reviewing the plaintiffs appeal, phrased the main issue in the following terms:
The main question presented is: Is the Michigan State tax commission required by law to reduce an intentionally unequal personal property assessment to the level of assessment for all property—both real and personal—taxable in the assessment district? [Id. at 377.]
After reviewing the language of Const 1908, art 10, §§ 3 and 7, the Court also concluded that the then-current GPTA required the uniform assessment of both real and personal property. General Motors, supra at 377. “Thus, all taxable property, real and personal, is placed in one category to be uniformly assessed and taxed.” Id. at 378 (emphasis in original). The Supreme Court went on to express its concern that the constitutionally entrenched principle that property be assessed at fifty percent of its cash value was not strictly adhered to, and that as a result, “[assessments often bear no relation to the actual cash value of the property or to the level of assessments in adjoining governmental units.” Id. at 378-379.
Concluding that the standard of true cash value had been all but destroyed, the General Motors Court noted that “the standard of uniformity becomes even more imperative.” Id. at 379. The Court then offered the following observation that plaintiffs seize on as support for their argument in the instant cases. “As a practical matter, unequal assessments must be reduced to the average level of assessment if the taxpayer is to have a remedy.” Id.
*309 Upon the record before us, General Motors’ personal property was assessed at an average of 83.7% of State equalized value. The weighted average of all property—real and personal—would be 76% of State equalized value. This is the average which (assuming the correctness of the commission’s findings) should have been used in computing General Motors’ personal property tax liability.
We hold that the mode of assessment used by the State tax commission was incorrect in that, having adopted a standard of average assessment levels to determine the question of uniform treatment of General Motors, it did not take into account the average assessment level of all property, real and personal. [Id. at 379-380 (emphasis in original).]
As an initial matter, we note that in General Motors, supra, the Court did not rule that the language requiring that “property shall be uniformly assessed” as set forth in Const 1963, art 9, § 3 required that the plaintiff be granted relief similar to that sought by plaintiffs here. Indeed, this language did not even exist in the 1908 version of the state constitution, which merely called for a “uniform rule of taxation.” General Motors, supra at 377.[11] Further, the key issue in General Motors was whether, in assessing personal property, the STC erred in adopting a standard of average assessment levels to determine the question of uniform treatment of the plaintiff, but did not take into account the average assessment for all property, both real and personal. Id. at 377, 380. Therefore, contrary to plaintiffs’ assertions on appeal, General Motors does not stand for the narrow proposition that the ratio of taxable value to true cash *310 value need be equal to the average ratio for all property in a township or city.
Indeed, the Supreme Court rendered its decision in General Motors before the electorate amended Const 1963, art 9, § 3. See, e.g., Waterford Twp v Oakland Co Tax Allocation Bd, 312 Mich 556, 559; 20 NW2d 497 (1945) (where there are amendments of the state constitution, prior cases may be rendered inconsistent or inapplicable to the extent that they are of limited value). Hence, we agree with the trial courts in these cases that General Motors, supra, is of limited value in resolving the issue in these present appeals.
Plaintiffs further maintain that the electorate was aware of the Supreme Court’s decision in General Motors, supra, and ratified plaintiffs’ rights that flow from that decision. Plaintiffs are correct in their assertion in their briefs on appeal that
“[w]here a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it.” [People v Kirby, 440 Mich 485, 491-492; 487 NW2d 404 (1992), quoting Richardson v Secretary of State, 381 Mich 304, 311; 160 NW2d 883 (1968).]
See also People v Antkoviak, 242 Mich App 424, 462; 619 NW2d 18 (2000).
However, we are of the view that a plain reading of the clear terms of the current constitutional provision, viewed against the backdrop of the circumstances leading to the passage of Proposal A, reveals that plaintiffs’ argument on appeal is without merit. Specifically, the electorate, through the passage of Proposal A, has manifested its intention that, under *311 certain circumstances, the ratio of taxable value of real property to true cash value need not be uniform with the city- or township-wide average.
One of the most important methods of ascertaining the meaning of a constitutional provision is to consider “ ‘the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished . . . House Speaker v Governor, 443 Mich 560, 580; 506 NW2d 190 (1993), quoting Soap & Detergent Ass’n v Natural Resources Comm, 415 Mich 728, 745; 330 NW2d 346 (1982), in turn quoting Traverse City School Dist, supra; see also Bolt, supra at 160. This rule is particularly applicable when considering a constitutional amendment.
“The language of a constitutional amendment should be read in connection with the known condition of affairs out of which the occasion for its adoption may have arisen, and then construed, if there be therein any doubtful expressions, in a way, so far as is reasonably possible, to forward the known purpose or object for which the amendment was adopted.” [Civil Service Comm v Auditor General, 302 Mich 673, 681-682; 5 NW2d 536 (1942), quoting Maxwell v Dow, 176 US 581; 20 S Ct 448, 494; 44 L Ed 597 (1900).]
Proposal A was presented to the electorate on March 14, 1994, the culmination of a bipartisan effort to reform the school financing system in Michigan. House Legislative Analysis, Senate Joint Resolution S (Second Analysis), March 1, 1994, p 1. Proposal A “authorized an increase in the state sales and use tax for use in school aid, limited use of local property taxes for school purposes, and authorized other changes in school finance.” Durant v Michigan, 456 Mich 175, 212, n 42; 566 NW2d 272 (1997). As relevant to the present appeals, part of Proposal A’s purpose *312 was to limit the annual increase in property assessments. WPW Acquisition Co v Troy, 243 Mich App 260, 267-268; 620 NW2d 883 (2000), lv gtd 465 Mich 885 (2001).
Proposal A was one of two separate financing plans[12] that the Legislature developed to reform school financing and to restore funding for schools that was lost with the passage of 1993 PA 145, which eliminated all school operating property taxes effective December 31, 1993. House Legislative Analysis, Senate Joint Resolution S (Second Analysis), March 1, 1994, p 2.
At the heart of the school financing problem is the local property tax. Michigan is by most accounts a high property tax state, regularly raising more revenue from that source than from sales and income taxes combined. It is a highly visible, unpopular tax, that is often described as inconsistently administered from community to community. . . . The Citizens Research Council said in a recent report that, in 1990, ‘Michigan property taxes were 31 percent higher than the national average.’ [Id.]
See also Fino, supra at 180 (noting that when Proposal A was presented to the electorate in March 1994, “there [was] a general feeling that Michigan property taxes [were] too high”).
Thus, Proposal A aimed to curb property tax assessments by placing a cap on how quickly assessments could increase. House Legislative Analysis, Senate Joint Resolution S (Second Analysis), March 1, 1994, p 4. Under the plan, an assessment would not increase from one year to the next by more than five *313 percent or the rate of inflation, whichever was less. Id. Once property is transferred, Proposal A provided that it would be reassessed on the basis of market value. Id. After Proposal A, Michigan’s property tax burden fell from one of the highest in the nation to below the national average. Chris Christoff: Engler’s Michigan: Gamble on Proposal A Pays Off for Governor, The Detroit Free Press, January 15, 2002.
Thus, an understanding of the circumstances leading to the passage of Proposal A demonstrates that in March 1994 the electorate was dissatisfied with Michigan’s high property tax and therefore sought to prevent its rapid expansion. Further, none of the parties disputes that the amendment of Const 1963, art 9, § 3 was intended to curb the growth of property tax assessments. Thus, our task is to construe Const 1963, art 9, § 3 in a manner that forwards the purpose of the constitutional amendment. Civil Service Comm, supra at 681-682.
After reviewing the language of Const 1963, art 9, § 3 as amended by Proposal A against the backdrop of its purpose and the circumstances leading to its adoption, we disagree with plaintiffs’ contention that the electorate intended that the ratio of taxable values to true cash values remain uniform with the average ratio for all property in the taxing district. Plaintiffs are correct in their assertion that Const 1963, art 9, § 3 provides that “[t]he legislature shall provide for the determination of true cash value at which such property shall be uniformly assessed.” (Emphasis supplied.) However, we believe that plaintiffs’ argument overlooks the remaining language of Const 1963, art 9, § 3, which provides:
*314 For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. [Emphasis supplied.]
In our view, plaintiffs’ argument fails to account for the electorate’s understanding, as provided by the above language, that property assessments remain capped until a parcel of property is transferred. To accept plaintiffs’ argument would require us to ignore the clear import of the above constitutional language, which reveals that the ratio of taxable value to true cash value of an individual parcel of property may be disparate from the average ratio for the taxing district, depending on whether the owner sells or retains the property. Specifically, Const 1963, art 9, § 3 expressly provides that when a parcel of property is transferred, “the parcel shall be assessed at the applicable proportion of current true cash value." (Emphasis supplied.) Accepting plaintiffs’ argument, which runs contrary to the language of the constitutional provision, would violate one of the primary tenets of constitutional interpretation, “that requires that a [constitutional] provision be interpreted to give reasonable effect to all, not just some, of its parts.” House Speaker, supra at 579.
Moreover, if we were to accept plaintiffs’ argument, the practical result would be that the electorate’s amendment of Const 1963, art 9, § 3, providing for a cap on property assessments, would in essence be *315 nullified. “[WJherever possible, an interpretation that does not create constitutional invalidity is preferred to one that does.” Council of Organizations & Others For Ed About Parochiaid, Inc v Governor, 455 Mich 557, 570; 566 NW2d 208 (1997). In sum, we reject plaintiffs’ assertion that the electorate, in adopting Proposal A in March 1994, understood its action to mean that the ratio of taxable value to true cash value of an individual parcel of real property remain uniform with that of the average in the taxing district. We must give the constitutional amendment its “ ‘plain meaning as understood by its ratifiers at the time of its adoption.’ ” Michigan United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359, 373; 630 NW2d 297 (2001) (Young, J., concurring) (emphasis in original), quoting Bulger, supra at 507.
We conclude that the inteipretation advanced by defendants in these consolidated cases, that the ratio of taxable value to true cash value need not be uniform with the average of all property in the taxing district, is the meaning “ ‘which reasonable minds, the great mass of the people themselves, would give [Const 1963, art 9, § 3].’” Bolt, supra at 160, quoting Traverse City, supra at 405 (emphasis omitted). Thus, we decline plaintiffs’ invitation to graft onto the plain language of Const 1963, art 9, § 3 a meaning that was not clearly intended by its ratifiers in March 1994. See MUCC, supra at 374-375.
Further, we disagree with plaintiffs’ contention that the words “assessment” and “taxable value” in the constitution are synonymous because they both refer to the value on which taxes are generally based. Plaintiffs point to other provisions of the state consti *316 tution, arguing that the provisions support plaintiffs’ theory that the word “assess” in the constitution means the value on which property tax is based, and that assessments and taxable value are synonymous, and therefore uniform taxable values are required. According to plaintiffs, it would render an “absurd result” for the Court to hold that “assessment” means one thing in the constitution as a whole, that being the value on which taxes are based, and another in the Uniformity of Taxation Clause.[13]
Other than plaintiffs’ repeated insinuations to the contrary, there is simply nothing in the plain language of Const 1963, art 9, § 3 that indicates that taxable value and assessment are one and the same to the extent that plaintiffs are entitled to uniform ratios of taxable value to true cash value. Although plaintiffs point to other provisions of the constitution that recite the terms “assess” and “assessment,” we do not believe that these citations support plaintiffs’ theory that “taxable value” and “assessment” are synonymous.[14]
*317 As the esteemed Justice Cooley acknowledged in his seminal work on constitutional interpretation, a constitutional provision should be interpreted by reference to the instrument as a whole, “with a view to arriving at the true intention of each part.” 1 Cooley, Constitutional Limitations (8th ed), p 127 (emphasis omitted). However, although it can be presumed that the same word is used to convey the same meaning in different parts of the constitution, id. at 135, Justice Cooley, quoting Story, Commentaries on the Constitution of the United States, § 454 (1833), has cautioned against the “arbitrary” use of this rule:
“It does not follow, either logically or grammatically, that because a word is found in one connection in the Constitution with a definite sense, therefore the same sense is to be adopted in every other connection in which it occurs. This would be to suppose that the framers weighed only the force of single words, as philologists or critics, and not whole clauses and objects, as statesmen and practical reasoners. And yet nothing has been more common than to subject the Constitution to this narrow and mischievous criticism. Men of ingenious and subtle minds, who seek for symmetry and harmony in language, having found in the Constitution a word used in some sense which falls in with their favorite theory of interpreting it, have made that the standard by which to measure its use in every other part of the instrument. They have thus stretched it, as it were, on the bed of Procrustes, lopping off its meaning when it seemed too large for their puiposes, and extending it when it seemed too short. They have thus distorted it to the most unnatural shapes, and crippled where they have sought only to adjust its proportions according to their own opinions.”
In the absence of clear language in Const 1963, art 9, § 3 suggesting that taxable value and assessment are one and the same, it appears that plaintiffs are engaging in the type of constitutional misinterpreta *318 tion against which Justice Cooley cautioned. In our opinion, if the drafters of the amendment of Const 1963, art 9, § 3 had intended to provide for uniformity in the ratio of taxable value to true cash value, they could have so stated. Likewise, there is nothing in the language of Const 1963, art 9, § 3 that would indicate that the electorate’s common understanding of this provision is that an individual parcel of property’s ratio of taxable value to true cash value is to remain uniform with that of all other property in the taxing district.[15] Rather, the circumstances surrounding the adoption of this amendment would suggest otherwise, since it was the electorate’s intent to cap increases in property assessments. Justice Young’s comments in MUCC, supra at 374-375, are instructive in this regard:
Th[e] rule of [common understanding] acknowledges the possibility that a provision of the constitution may rationally bear multiple meanings, but the rule is concerned with ascertaining and giving effect only to the construction, consistent with the language, that the ratifiers intended. Thus, our task is not to impose on the constitutional text. . . the meaning we as judges would prefer, or even the meaning the people of Michigan today would prefer, but to search for contextual clues about what meaning the people who ratified the text in [1994] gave to it.
*319 Finally, to the extent that plaintiffs contend that the Legislature acted improperly in amending provisions of the GPTA in response to the electorate’s passage of Proposal A, we conclude that this argument is simply without merit. Specifically, plaintiffs maintain that the Legislature sought to eliminate plaintiffs’ purported rights under General Motors, supra, by providing that taxes now be spread against “taxable value.” In support of their argument, plaintiffs cite our Supreme Court’s observation in Westinghausen v People, 44 Mich 265, 270; 6 NW 641 (1880):
It is hardly necessary to say that subsequent legislation could not change the meaning or effect of any part of the Constitution; that instrument can only be changed by the combined action of the Legislature and the people. If the Legislature could, by merely calling things by particular names, alter constitutional provisions, it would be quite unnecessary to consult the people on the subject of amendments.
However, plaintiffs fail to note that Const 1963, art 9, § 3 clearly provides that “[f]or taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property . . . shall not increase each year by more than the increase in the immediately preceding year in the general price level ... or 5 percent, whichever is less . . . .” (Emphasis added.) Thus, the plain language of Const 1963, art 9, § 3 provides the Legislature with the authority to provide for the definition of taxable value. Further, “[t]he power to levy taxes for governmental needs is in the legislature subject only to limitations and regulations found in the Constitution.” Shivel v Kent Co Treasurer, 295 Mich 10, 15; 294 NW 78 (1940). Likewise, the judiciary is not to concern *320 itself with the policy of state taxation adopted by our Legislature. C F Smith Co v Fitzgerald, 270 Mich 659, 670; 259 NW 352 (1935).
By the mandate of the Constitution . . ., it is made the duty of the legislature to provide a uniform rule of taxation, and an essential element of that uniform rule is, that all assessments of property shall be at its cash value. The power to impose taxes is vested exclusively in the legislative department of government and cannot be exercised except in pursuance of its authority. The legislative department has, subject to the limitations of the Constitution, a broad and uncontrollable discretion over the general subject of taxation,—the raising of revenue for the support of the government. The power of the legislature of this State is as omnipotent as that of the parliament of England, save only as it is restrained by the Constitution of the United States and the Constitution of this State. Within constitutional limits, the legislature has full control over the subject of taxation. [Hudson Motor Car Co v Detroit, 282 Mich 69, 79; 275 NW 770 (1937) (citations omitted).]
Rather than attempting to divest property owners of their constitutional rights, it is clear that the Legislature amended the gpta in 1994 in an attempt to legislatively facilitate the assessment cap the electorate accepted in passing Proposal A. See House Legislative Analysis, HB 5945 (Second Analysis), January 9, 1995, p 1. Because taxes were levied on a property’s SEV before the passage of Proposal A, MCL 211.24b, the Legislature amended the legislation to provide for a new vehicle by which to assess property taxes, that being taxable value. Because the Legislature did not act outside its constitutional limits in prescribing the method of taxation, we decline plaintiffs’ implied invitation to speculate regarding the Legislature’s motives. “[S]o long as the legislation is . . . confined *321 to the enactment of what is in its nature strictly a tax law, and so long as none of the constitutional rights of the citizen are violated in the directions prescribed for enforcing the tax, the legislation is of supreme authority.” Cooley, The Law of Taxation (1st ed) (1876), p 35.[16]
Affirmed in all cases.
Cooper, J., concurred.

 Plaintiffs are commercial property owners in the city of Troy, Canton Township, the city of Oak Park, Southfield Township, and the city of Southfield.

 Although plaintiffs list seven separate issues in their statement of questions presented, six of the delineated issues concern the core issue on appeal, whether Const 1963, art 9, § 3 requires that the proportion of taxable value to true cash value be uniform among all property in a taxing district.

 In Meadowbrook Village Associates v Auburn Hills, 226 Mich App 594; 574 NW2d 924 (1997), the petitioner advanced the identical issue raised in the present appeals. This Court declined to rule on the merit of the petitioner’s argument in Meadowbrook, concluding that the Tax Tribunal lacked jurisdiction to decide this constitutional issue. Id. at 597. However, the Meadowbrook Court, in dicta, observed that
[the] petitioner seeks a ruling that the terms “taxable value,” “assessment,” and “assessed” in Const 1963, art 9, § 3 have the same meaning. This interpretation would invalidate the statutes that implement the constitutional provision because they provide for taxation based on taxable value, not assessed value. See [MCL 211.27a, 211.24b.]

 The trial court denied plaintiffs’ motion for summary disposition and granted judgment in favor of defendant pursuant to MCR 2.116(I)(2) in an order and opinion entered December 13, 1999.

 In Docket No. 232132, the parties submitted the matter to the trial court on stipulated facts and briefs. The trial court found “no cause of action on Plaintiffs’ Complaint and enter[ed] Judgment for Defendant.” Although the court did not indicate under what subsection of MCR 2.116 it was granting judgment in favor of defendant, it appears that it found plaintiffs’ complaint deficient as a matter of law. Thus, both plaintiffs and defendant in Docket No. 232132 agree that it would be appropriate to review the trial court’s decision pursuant to MCR 2.116(C)(8).

 In Docket No. 224813, the trial court observed that it reviewed plaintiffs’ summary disposition motion pursuant to MCR 2.116(C)(10).

 Const 1850, art 14, § 11 provided:
The legislature shall provide a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: Provided, That the legislature shall provide a[ ] uniform rule of taxation for such property as shall be assessed by a state board of assessors, and the rate of taxation on such property shall be the rate which the state board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for state, county, township, school and municipal purposes.
Const 1850, art 14, § 12 provided:
All assessments hereafter authorized shall be on property at its cash value.
Const 1908, art 10, § 3 provided:
The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: Provided, That the legislature shall provide by law a uniform rule of taxation for such property as shall be assessed by a state board of assessors, and the rate of taxation on such property shall be the rate which the state board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for state, county, township, school and municipal purposes.
Const 1908, art 10, § 7 specified that “[a]ll assessments hereafter authorized shall be on property at its cash value.”

 The italicized portions represent the amendments enacted by Proposal A, effective April 30, 1994. Before the passage of Proposal A, Const 1963, art 9, § 3 provided:
The legislature shall provide for the uniform general ad valorem taxation of real and tangible property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates.

 MCL 211.27a has subsequently been amended by 1996 PA 476 and 2000 PA 260.

 Plaintiffs also point to this Court’s decision in Hoerner-Waldorf Corp v Ontonagon, 26 Mich App 542, 545; 182 NW2d 759 (1971), where this Court cited General Motors, supra, and stated, “Hoemer-Waldorf is entitled to relief only if its property was assessed at a ratio of trae cash value greater than the ‘average level of assessment’ of all property, real and personal, in the taxing district.” Plaintiffs also cite NeBoShone Ass’n, Inc v State Tax Comm, 58 Mich App 324, 342-344; 227 NW2d 358 (1975), where a panel of this Court, after considering the language of Const 1963, art 9, § 3 before its amendment in 1994, followed General Motors, supra, and Hoemer-Waldorf, supra, concluding that the plaintiff was entitled to relief if its property assessment of assessed value to true cash value exceeded the average in the taxing district.
See also Shaughnesy v Tax Tribunal, 420 Mich 246, 249; 362 NW2d 219 (1984) (noting in dicta that where a taxpayer protests a property valuation before the local board of review, he may only obtain relief from a tenta *307 tive valuation before equalization if “he can show that his property has been assessed at a different proportion of true cash value than the rest of the property within the same class in the taxing district”); Brittany Park, supra at 88 (“The Supreme Court has recognized a taxpayer’s right to complain that his assessment was not made in uniformity with other assessments. If the claim is based on lack of uniformity, the taxpayer must show that the ratio of assessed value to fair market value of his property is greater than the ratio of average assessed value to the average fair market value in the taxing district.”) (Citations omitted.); Great Lakes, supra at 427 (“The taxpayer may obtain relief only when it is shown that the property was assessed at a different proportion of true cash value than the rest of the property within the same class in the taxing district.”). However, the courts in these cases did not address the precise issue plaintiffs raise in the instant cases.

 However, in NeBoShone, supra at 342, the Court, considering Const 1963, art 9, § 3, ruled that the stc was required to proceed under the mandate set forth by General Motors, supra.

 The other was a statutory plan to take effect if the electorate rejected Proposal A.

 Plaintiffs also cite myriad cases in their appellate briefs, arguing that the cases support their argument that “assessment” and “taxable value” are identical for the purposes of interpreting Const 1963, art 9, § 3. We have reviewed plaintiffs’ pinpoint citations to these cases, none of which stands for plaintiffs’ stated proposition.

 Plaintiffs also cite Owendale-Gagetoum School Dist v State Bd of Ed, 413 Mich 1; 317 NW2d 529 (1982), for the proposition that taxable value and assessment are one and the same. In Owendale, the Supreme Court reviewed the statutory language of § 461 of the School Code of 1955, and concluded that a transfer of property from one school district to another needed to be approved by the school tax electors when the transfer amount was greater than ten percent of the “latest available taxable valuation of the district.” Owendale, supra at 10. Although the Court referred to the term “taxable valuation” in portions of its ruling, id. at 5, 6, which was gleaned from the language of the pertinent statute, there is nothing in Owendale that supports plaintiffs’ proposition that the words “taxable value” and “assessment” as used in Const 1963, art 9, § 3 are identical.

 To the extent that plaintiffs direct our attention to the ballot language that was presented to the voters in March 1994, we believe that reliance on this material is inappropriate in discerning the electorate’s common understanding, where its intent may be gleaned from the language of the constitution itself. Our Supreme Court has recently cautioned lower courts that reference to extrinsic material is of dubious and limited value when the plain language of the constitution expresses the electorate’s intent. American Axle, supra at 362.

 Given our disposition of plaintiffs’ initial issue in these appeals, we need not address the issue concerning the circuit court’s jurisdiction regarding tax refunds.