*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PINEWOOD CIRCLE LLC,

        Petitioner-Appellant,

v

CITY OF ROMULUS,

        Respondent-Appellee.

UNPUBLISHED
December 19, 2024
12:33 PM

No. 367182
Tax Tribunal
LC No. 21-002697-TT

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In this case challenging the assessed taxable value (TV) and state equalized value (SEV) of a 156-unit, apartment complex property located in the City of Romulus, petitioner appeals as of right the Michigan Tax Tribunal's (MTT) order granting summary disposition in favor of respondent, the City of Romulus (the city). For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

Petitioner purchased the subject property in 2020 for $16,550,000. The property's true cash value (TCV) for 2020 was $7,912,204, and its SEV and TV for 2020 were each $3,956,100. In 2021, the TCV increased to $16,457,366, and the SEV and TV each increased to $8,228,700.

Petitioner filed a petition in the MTT challenging the increases in the values at which the property was assessed. Petitioner alleged that the city violated MCL 211.27(6) and related State Tax Commission (STC) directives because the valuation method used by the city to determine the 2021 TCV for the property was not the same as the valuation method used by the city to value all other property of the same commercial classification as the subject property. Petitioner sought an order reducing the 2021 TV and SEV for the property on the ground that the TCV on which the other values were based was invalid.

The city's director of assessing and financial services, Julie Albert, testified in her deposition that she was responsible for setting the assessed values (AV), SEVs, and TVs for properties located within the city. She explained that multi-family properties, such as the subject

-1-

property, were classified as commercial properties. Albert also explained that assessing the valuation of commercial properties involved inspecting the property, "not[ing] the attributes," consulting the "cost manual," and applying an "economic condition factor" (ECF) multiplier. According to Albert, an ECF multiplier "basically . . . adjusts the cost manual to the market," and ECF multipliers are established by "looking at sales that occur in that particular category." There are different ECF multipliers for different categories of property. The cost computations for a property are determined at the time of construction and then updated "as physical changes occur to the property." In general, each property is inspected approximately once every five years.

In 2020, the general commercial ECF of 0.83 was applied to the subject property and other similar multi-family properties. In 2021, Albert created a separate ECF for commercial apartment properties based on a sales study, and this ECF of 1.375 was applied to the subject property and other similar multi-family properties. Albert also testified about other changes that were made that affected the valuation for the subject property in 2021. The building quality for the 13 residence buildings on the property was raised from "low cost" in 2020 to "average" in 2021. The quality of the property's clubhouse was treated as "average" in both years. The "economic percent good" factor went from 90% in 2020 to 100% in 2021. Depreciation of 2% was used in 2020, but 1.75% depreciation was used in 2021. Albert inspected the subject property on June 14, 2019. She testified that her inspection consisted of driving through the parking lot and looking at the exterior of the various buildings on the property. Regarding the specific changes to the property's building quality, economic percent good factor, and depreciation, Albert testified that the changes seemed appropriate but she did not give a more detailed explanation of reasons for the changes.

Petitioner filed a motion for summary disposition under MCR 2.116(C)(10). Petitioner contended that if the city had only changed the ECF multiplier for the subject property, which was also applied to other multi-family properties, then the subject property's TCV would have only increased from $7,912,204 to $11,931,775, resulting in a proportionally lower TV and SEV. Instead, petitioner argued, the city additionally "manipulated three variables" in the cost determination after the 2020 sale—i.e., the property's building quality, economic percent "good," and the depreciation rate—in order to "more than double the 2021 TCV, so that it virtually equaled the Subject Property's sale price." Petitioner argued that Albert was unable to provide a specific explanation for these changes in her deposition. Consequently, petitioner argued that the evidence demonstrated that the city unlawfully "followed the sale" and assessed the subject property differently on the basis of its recent sale rather than on other similar properties that had not recently sold, thereby violating the uniform taxation required by the Michigan Constitution, MCL 211.27(6), and the STC.

The city responded with its own motion for summary disposition under MCR 2.116(C)(10), arguing that the 2021 assessment of the subject property was levied according to the same method of valuation applied to all other parcels in the apartment class. The city maintained that the 2021 property record cards submitted by petitioner showed that the cost-less-depreciation value method was used to value all of the commercial apartment properties in the city, including the subject property. The city further argued that the STC Bulletin and Memorandum relied on by petitioner were not promulgated as rules under the Administrative Procedures Act, did not have the binding force of law, and attempted to impose a prohibition on "following the sales" that was not included in the relevant statutory or constitutional provisions. Moreover, the city argued that it had not singled the subject property out based on its recent sale but had instead reviewed all of the

commercial apartment properties because of the newly created ECF. In its response to petitioner's motion for summary disposition, the city maintained that it had complied with MCL 211.27(6) for the 2021 assessment.

The city attached an affidavit by Albert to its motion. In that affidavit, Albert averred that all of the commercial apartment parcels in the city were valued for the 2021 tax year according to the cost approach to value and that the "base rates, multipliers, unit in place costs, depreciation tables, sprinkler costs, HVAC costs, and other costs were all taken directly from the State Tax Commission Manual . . . ." Albert also indicated that she "believe[d]" that she reviewed all of the parcels in the commercial apartment class to which the new commercial apartment ECF would apply in 2021, as part of her process for setting the 2021 true cash, state equalized, assessed, and taxable values for all properties in the city. During her review, she found errors in at least six 2020 property records within this class, including the subject property. Albert corrected those errors for the 2021 assessment. Those corrections included changing the building quality for the subject parcel's apartment buildings from low to average quality, which in turn necessitated the changes in the applicable depreciation table and economic obsolescence factor as described above.

The MTT, after first denying both motions for summary disposition, reconsidered and entered an order granting summary disposition in favor of the city. The MTT concluded that its decision was supported primarily by the property record cards submitted by both parties, explaining:

> Respondent did not adopt the property's sale price or otherwise chase sales. Rather, Respondent utilized the same methodology for the valuation of the subject property, and all similarly situated properties in that taxing jurisdiction including the other property that sold for the tax year at issue (i.e., the cost approach). As for Respondent's previous inspection in 2019 and failure to make changes to the property for the 2020 tax year, there is no explanation. Nevertheless, Respondent created a new ECF for use in adjusting the cost of the depreciated improvements for all such properties for the 2021 tax year, which required a review of all such properties, including the subject and the other property that sold, that resulted in changes to the subject as well as other non-sold properties in the new ECF "neighborhood." With respect to the subject's changes, Petitioner's contention of "disparate treatment" is misplaced, as the granting of Petitioner's Motion would merely have allowed for the continued incorrect assessment of the property. In that regard, the rationale for changing both the class of construction from "low cost" to "average" and the removal of the 10% economic depreciation or obsolescence factor was justified based on the assessor's knowledge of the property, the class of construction assigned to the clubhouses, and the lack of any market evidence to support the original decision to apply the 10% factor. The fact that the assessment increased to an amount within 6% of the sale price based on the above-noted changes and the application of the new increased ECF that was applied to the subject and all other such properties, supports a finding that the property's previously incorrect assessment was reviewed and corrected based on the creation and application of the new ECF and not the property's sale. As such, the assessment was not the result of "chasing sales" or "disparate treatment."

Petitioner now appeals.

## II.  STANDARD OF REVIEW

"Unless there is fraud, this Court's review of MTT decisions is limited to determining whether the MTT erred in applying the law or adopted a wrong legal principle." *West Mich Annual Conference of the United Methodist Church v Grand Rapids*, 336 Mich App 132, 137; 969 NW2d 813 (2021) (quotation marks and citation omitted).  We review the MTT's interpretation and application of statutes de novo.  *Id*.  This Court will generally give "respectful consideration" to the MTT's interpretation of a statute that it is delegated to administer, but that deference will not extend to legal errors by the MTT.  *Id*. (quotation marks and citation omitted).

The MTT's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(10) is reviewed de novo.  *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010).  Under de novo review, the legal issues are reviewed independently, with no deference required to the courts below.  *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, and a court "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

This Court reviews de novo as a question of law whether the Uniformity of Taxation Clause was violated.  *WPW Acquisition Co v City of Troy*, 250 Mich App 287, 294; 646 NW2d 487 (2002).

## III.  ANALYSIS

On appeal, petitioner argues that the MTT erred by concluding as a matter of law that the city's assessor did not violate MCL 211.27(6) and thus granting summary disposition in favor of the city.  Petitioner maintains that there is at least a genuine question of material fact whether the assessor illegally "chased the sale" and failed to assess the property uniformly according to the same valuation method used to value all other property of the same commercial apartment classification.  According to petitioner, the evidence supports a conclusion that the assessor improperly manipulated three property characteristics within the cost approach valuation method to determine a new TCV for the property in 2021 that was virtually identical to the price for which the property sold in 2020.

Under § 10 of the General Property Tax Act (GPTA), MCL 211.1 *et seq*., an "assessment of all the property in the state liable to taxation shall be made annually in all townships, villages, and cities by the applicable assessing officer as provided in section 3 of article IX of the state constitution of 1963 and section 27a." MCL 211.10(1).  The Michigan Constitution requires uniformity in the general ad valorem taxation of real property.  *Edward Rose Bldg Co v*

-4-

*Independence Twp*, 436 Mich 620, 640; 462 NW2d 325 (1990); Const 1963, art 9, § 3. Specifically, Article 9, § 3 of the Michigan Constitution requires that the legislature "shall provide" for (1) the "uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes"; (2) the "determination of true cash value of such property"; (3) the "proportion of true cash value at which such property shall be uniformly assessed, which shall not . . . exceed 50 percent"; and (4) "for a system of equalization of assessments." Const 1963, art 9, § 3. There is a cap on the amount the taxable value of real property may increase from year to year, which remains in place until a transfer of ownership occurs. Const 1963, art 9, § 3. "*When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value.*" Const 1963, art 9, § 3 (emphasis added).

Section 27a(1) of the GPTA provides that "[e]xcept as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963." MCL 211.27a(1). As used in the GPTA, "true cash value" means "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale." MCL 211.27(1). "True cash value is synonymous with fair market value." *WPW Acquisition Co*, 250 Mich App at 298.

"The three most common approaches for determining true cash value are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 390; 576 NW2d 667 (1998). "[V]ariations of these approaches and entirely new methods may be useful if found to be accurate and reasonably related to fair market value" because "the Legislature did not direct that specific methods be used." *Id*. Although the "petitioner has the burden to establish the property's true cash value," the MTT "has the duty to determine the property's true cash value using the approach that most accurately reflects the value of the property" even "if the petitioner fails to show that the assessment was too high." *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 435; 830 NW2d 785 (2013). Hence, the "Tax Tribunal has a duty to make its own, independent determination of true cash value." *Great Lakes*, 227 Mich App at 389.

As this Court has explained, " '[t]rue cash value' is the starting point for determining the taxable value of real and tangible personal property in Michigan." *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013) (citations omitted). Taxable value, in turn, is defined in MCL 211.27a as follows:

> (2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
>
> (b) The property's current state equalized valuation.

(3) Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer.

(4) If the taxable value of property is adjusted under subsection (3), a subsequent increase in the property's taxable value is subject to the limitation set forth in subsection (2) until a subsequent transfer of ownership occurs. . . .

This Court has previously provided the following explanation of the difference between TV and SEV:

Legislative analysis reflects that the Legislature amended the GPTA following the passage of Proposal A to "flesh out in statute" the new concept of taxable value. . . .

Typically, [before Proposal A,] property has been assessed for tax purposes based on market value; the millage rate is applied to the state equalized valuation (SEV), which is supposed to be set at 50 percent of market value. But with the [Proposal A] assessment cap in place, a parcel of property will have both a state equalized valuation and a taxable value, which might or might not be the same amount. Property whose value is increasing faster than the rate of inflation will, due to the cap, have a taxable value below (perhaps, over time, far below) state equalized valuation. Upon its sale or other transfer of ownership, the property's taxable value and SEV would be the same until the cap was applied once again. . . . [*WPW Acquisition*, 250 Mich App at 301 (alterations in original).]

Although the purchase price is not the presumptive TCV, it is also not presumptively excluded as the TCV, contrary to what the petitioner argues. At its core, this is a dispute regarding the proper valuation of the property. The MTT cannot simply accept the municipality's assessment as correct, which is essentially what it did in this case. *In Forest Hills Co-operative v City of Ann Arbor*, 305 Mich App 572, 587; 854 NW2d 172 (2014), this Court stated, "The Tax Tribunal may not automatically accept a respondent's assessment in a property-tax proceeding." Here, there is at least a question of fact as to whether the assessor treated the purchase price as the presumptive TCV of the subject property and manipulated variables in the assessment methodology without sufficient justification or current inspection to arrive at the same value. We are not deciding that the TCV cannot equal the purchase price; the statute clarifies that the purchase price is not presumptively the TCV. MCL 211.27(6). Furthermore, we are not concluding that the city's assessment was improper or arbitrary. We merely determine that, in this instance, the MTT did not fulfill its duty to determine the TCV independently and effectively rubber-stamped the city's assessment. Therefore, we reverse.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica